1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br>         v.<br><br>SUREN BABAYAN, et al.,<br><br>                                    Defendants. | Case No. 2:15-cr-00291-JAD-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot. Dismiss – ECF No. 38) |

Before the court is Defendant Suren Babayan's ("Babayan") Motion to Dismiss Pursuant to Fed. R. Crim. P. 12, Alternatively for Outrageous Governmental Conduct and Entrapment (ECF No. 38) which was referred for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4.  The court has considered the Motions (ECF Nos. 38), Defendant Arsen Grigoryan's ("Grigoryan") Joinders (ECF Nos. 39, 43), the government's Response (ECF No. 41), and Babayan's Reply (ECF No. 42).

## BACKGROUND

### I.     The Superseding Indictment

Babayan was initially charged in an Indictment (ECF No. 1) returned October 20, 2015, with two counts of trafficking in contraband cigarettes in violation of 18 U.S.C. §§ 2342(a), and thirteen counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(ii).  Co-Defendant Grigoryan was initially charged in the Indictment (ECF No. 1) with one count of trafficking in contraband cigarettes in violation of 18 U.S.C. §§ 2342(a).  A Superseding Indictment (ECF No. 19) was returned December 1, 2015, charging Babayan with eight counts of trafficking in contraband cigarettes in violation of 18 U.S.C. §§ 2342(a), conspiracy to traffic in contraband cigarettes in violation 18 U.S.C. § 371, and thirteen counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(ii).  Co-Defendant Grigoryan is charged in the

1    Superseding Indictment (ECF No. 19) with conspiracy to traffic in contraband cigarettes in

2    violation 18 U.S.C. § 371.

3    **II.      The Motion to Dismiss**

4          The Motion to Dismiss is brought pursuant to Fed. R. Crim. P. 12(b) and seeks dismissal

5    of the superseding indictment on grounds it violates Babayan's due process rights under the Fifth

6    Amendment.  Alternatively, Babayan argues the court should dismiss the superseding indictment

7    based on outrageous government conduct and entrapment.  Babayan argues that the indictment

8    alleges that from September 2014, to approximately October 2015, Babayan coordinated and

9    purchased cigarettes from Crescent City, a New Orleans, Louisiana company, and thereafter

10   distributed cigarettes in various locations including Montebello, California and countries outside

11   of the United States.  The superseding indictment alleges that he knowingly purchased, received,

12   possessed, and sold in excess of 10,000 cigarettes which bore no evidence of payment of applicable

13   Nevada state cigarette taxes.  The superseding indictment charges Babayan with money laundering

14   for engaging in financial transactions converting cash into money orders and making cash deposits

15   into a J.P. Morgan Chase Bank account.

16         The motion maintains that the superseding indictment is fatally defective because it does

17   not charge a viable conspiracy to commit a crime.  The superseding indictment charges Babayan

18   with participating in a conspiracy to avoid paying cigarette taxes.  However, it fails to allege any

19   facts that establish Babayan actually owed cigarette taxes on the sales.  He contends he cannot be

20   convicted for conspiring to avoid cigarette taxes that were never due by him or AG Export, LLC.

21   Babayan argues that the Contraband Cigarette Trafficking Act ("CCTA") makes it unlawful for

22   any person to knowingly ship, transport, receive, possess, sell, distribute, or possess contraband

23   cigarettes.  Contraband cigarettes are defined as a quantity in excess of 10,000 cigarettes which do

24   not bear state-required stamps as evidence of payment of the required state cigarette tax.

25   Therefore, prosecution of the CCTA requires proof of a violation of state law, because cigarettes

26   are not contraband if no taxes are due.

27         Babayan also argues that only cigarettes sold to retailers in Nevada are subject to Nevada's

28   cigarette tax under state law.  The superseding indictment does not allege that Babayan sold any

cigarettes to retailers in Nevada during the time period at issue.  Rather, it alleges Babayan participated in brokering the cigarettes exclusively to an international customer "which bore the responsibility for paying any applicable taxes in their country."  NRS 370.210 provides that no cigarette revenue stamp tax is required on cigarettes exported from Nevada.  Therefore, Babayan had no liability to pay any Nevada taxes during the relevant time period.  Because he had no legal obligation to place tax stamps on the cigarettes sold, he cannot be guilty of conspiracy to violate the CCTA.

In this case, Department of Homeland Security law enforcement officers established an "Undercover Company and Warehouse" to facilitate large-scale sales.  Babayan attaches invoices from RJ Reynolds and Altria-Phillip Morris as exhibits to the motion to dismiss.  These invoices establish that the cigarettes used in the sting operation were initially purchased by the Department of Homeland Security ("DHS") agents from these companies.  From September 20, 2014, through October 2015, law enforcement officers allegedly sold approximately 29,850 cartons of cigarettes through the defendants and AG Export LLC, for export, in return for over $1 million.  After DHS agents received them, agents arranged for the cartons to be shipped and transported to the undercover warehouse in Louisiana, where most of the cigarettes were stamped by DHS agents.  The stamped cigarettes were then arranged to be shipped to Las Vegas or California by DHS agents and allegedly sold by undercover law enforcement officers "and brokered by Defendants to the ultimate buyer in Russia."  Under 18 U.S.C. § 2341(2) certain persons are exempted individuals or entities.  Among exempted individuals are officers, employees, or agents of the United States.

Under these circumstances, Babayan maintains that the indictment should be dismissed because it was factually and legally impossible for him to commit the acts alleged in the indictment.  He reasons that the term "contraband cigarettes" under the CCTA means a quantity in excess of 10,000 cigarettes which bear no evidence of the payment of applicable state or local taxes in the state or locality where such cigarettes are found.  A violation of the CCTA requires, as a predicate, the failure to comply with state tax laws. The motion argues that the government's tobacco diversion tactics in this investigation violate the plain language of the CCTA which was

1    intended as a tool to assist states that have lost hundreds of millions of dollars in tax revenue for

2    smuggling or bootlegging contraband cigarettes.

3         Here, the superseding indictment alleges that Babayan and co-defendant Grigoryan

4    purchased over 10,000 contraband cigarettes from undercover DHS agents, who in turn purchased

5    them from Phillip Morris and RJ Reynolds.  As part of the sting operation, DHS agents purchased,

6    shipped, transported, possessed, sold, and distributed the cigarettes to Babayan and Grigoryan.  If

7    the cigarettes DHS agents purchased were contraband cigarettes as defined by the CCTA, then

8    DHS' actions in relation to this case violated the plain language of 18 U.S.C. § 2342(a).  This is

9    because § 2341(2)(D) only exempts government agents from *possessing* contraband cigarettes in

10   the performance of their official duties.  Section 2341(2)(D) has no exemption allowing "creation

11   and orchestration" of a crime by purchasing, shipping, transporting, distributing, and selling

12   contraband cigarettes.

13        Babayan acknowledges that there are a number of federal statutes which permit law

14   enforcement officers to engage in unlawful criminal activity without sanctions.  However, the

15   CCTA has no provisions similar to those other statutes.  In this case, DHS agents purportedly

16   bought and sold millions of arguably taxable cigarettes in violation of the law they were tasked

17   with enforcing.  This is unlike a traditional reverse sting operation where law enforcement agents

18   maintain custody and control of contraband.  Here, the defendants received the cigarettes and

19   allegedly exported them to other countries, and the DHS agents were therefore directly responsible

20   for the introduction of millions of allegedly contraband cigarettes into the stream of commerce

21   with no intention to track or recover them.  Babayan maintains that there is simply no authority for

22   the government to run this type of uncontrolled operation.

23        Babayan contends that it was factually and legally impossible for him to commit the acts

24   alleged in the superseding indictment because if the cigarettes were not subject to state taxation,

25   they were not contraband cigarettes under 18 U.S.C. § 2341.  He cites the Fourth Circuit case of

26   *Ventimiglia v. United States*, 242 F.2d 620 (4th Cir. 1957) for the proposition there can be no

27   conviction for conspiracy to commit an offense against the United States if the act that the alleged

28

1   conspirators agreed to has not been made unlawful, and is not planned to be accomplished in an

2   unlawful manner.

3          Babayan also argues the court should dismiss the indictment in this case because of the

4   government's outrageous conduct.  He seeks a hearing to determine whether law enforcement

5   officers acted illegally in this case which would warrant dismissal of the superseding indictment

6   with prejudice based on outrageous government conduct.  The outrageous government conduct

7   defense focuses solely on the government's actions.  In this case, DHS agents bought and sold

8   millions of cigarettes in violation of the law they were tasked for enforcing.  The undercover

9   operation allowed the defendants to keep the allegedly contraband cigarettes and resell or broker

10  them by exporting them internationally.  Thus, any deprivation of applicable tax revenue was

11  solely due to the government's undercover conduct.  DHS introduced millions of cigarettes into

12  the stream of commerce in Nevada and California which contained allegedly counterfeit tax stamps

13  placed on them by DHS agents or at their instruction.  The agents' "unorthodox behavior escalated"

14  in their efforts to push higher and higher quantities of cigarettes on the defendants.  The motion

15  maintains that beginning in August 2014, the defendants were unable to come up with sufficient

16  advance funds to pay for all of the cigarettes, so DHS "fronted" the products to the defendants to

17  maintain and increase the volume of cigarettes being distributed from the undercover company

18  warehouse.  At times, DHS also funded the entire operation.  Government agents engineered and

19  orchestrated the events giving rise to the criminal charges.  The government's conduct in this

20  undercover operation to cajole the defendants to engage in illegal sale of cigarettes domestically

21  "shocks one's universal sense of justice."

22         The motion concludes by asserting that the defendants did everything by the book to

23  establish and incorporate an export company with the Nevada Secretary of State.  They obtained

24  a Nevada state business license, a Clark County business license, and consulted with a state

25  revenue officer in the Department of Taxation and Compliance to assure no impropriety or

26  violation of any statute, ordinance, or regulation "insofar as receiving cigarettes which would be

27  **exported** only by commercial airline carrier passenger(s)." (emphasis in original.) The defendants

28  were advised that it was perfectly legal to do what they were doing as long as no retail sale of

1    cigarettes occurred in Nevada.  Under the totality of the circumstances, the outrageous conduct

2    exhibited by DHS agents is egregious enough to shock the conscience and warrant dismissal of

3    the superseding indictment.

4              Finally, he argues the superseding indictment should be dismissed because law

5    enforcement created a crime for the purpose of bringing charges against the defendants who were

6    otherwise innocent by persuading them to participate in wrongdoing which amounts to entrapment.

7              Co-defendant Grigoryan filed a one-sentence joinder in the motion and reply.

8    **III.     The Government's Response**

9              The government opposes the motion claiming that in July 2014, Babayan contacted a Las

10   Vegas smoke shop owner seeking an inexpensive source of cigarettes to smuggle to Russia.  The

11   smoke shop owner gave Babayan the undercover phone number of Homeland Security Special

12   Agent Scott McGuire.  Babayan allegedly contacted McGuire.  McGuire informed Babayan that

13   McGuire ran a bonded warehouse in New Orleans that sold duty-free cigarettes to crews of

14   international ships that sailed through New Orleans.  The government claims that over the next

15   several months in numerous recorded phone conversations, texts, and meetings, Babayan ordered

16   and received more than 5 million cigarettes from McGuire.  The government maintains that all

17   cigarette purchases were initiated by Babayan and delivered to Babayan, and co-defendant

18   Grigoryan, always in Nevada.  Babayan bragged about having been in the business of smuggling

19   cigarettes for over 10 years, and discussed the fact that applicable state taxes had not been paid on

20   cigarettes obtained by Babayan and Grigoryan.

21             The government argues that Fed. R. Crim. P. 12(b)(3)(v) allows defendants to bring a

22   pretrial motion seeking dismissal of an indictment if it fails to state an offense as long as the motion

23   can be determined without a trial on the merits.  However, the court must accept all facts alleged

24   in the indictment as true.  The government argues that all counts in the superseding indictment

25   sufficiently allege criminal offenses.  The defendants are charged in each count with conduct

26   involving "contraband cigarettes" and whether the cigarettes were contraband is an element of the

27   charged offenses and a matter of fact for the jury to determine.

28

1    The government also asserts that defendants incorrectly characterize the superseding
2    indictment as charging them with participating in a conspiracy to avoid paying cigarette taxes.
3    The government argues that while payment of applicable state taxes may or may not be relevant
4    to proving a charge against the defendants, they are charged with conspiracy to traffic in
5    contraband cigarettes.  Citing *United States v. Skoczen*, 405 F.3d 437, 457 (7th Cir. 2005), the
6    government argues that the defendants are liable for possessing contraband cigarettes even though
7    they may not be the ones who owe any applicable taxes.  The government maintains that
8    defendant's motion is ultimately based on arguments that Nevada taxes were not owed.
9    Acknowledging that the defendant's claim may be a defense to the charges, the government argues
10   that defense is based on a number of facts which are matters to be determined by the jury and
11   outside the scope of a Rule 12(b) motion.  The motion, in effect, is challenging the sufficiency of
12   the government's evidence, or ability to prove its case rather than the sufficiency of the indictment.

13       With respect to the defendant's outrageous government misconduct arguments, the
14   government disputes that agents engaged in illegal conduct.  Contraband cigarettes are defined in
15   18 U.S.C. § 2341(2)(D) which does not apply to officers, employees, or agents of the United States
16   who have possession of cigarettes in connection with the performance of their official duties.  The
17   government also cites *United States v. Hasan*, 718 F.3d 338, 334 (4th Cir. 2014) in support of its
18   arguments that untaxed cigarettes are not contraband in the possession of federal agents.
19   Therefore, subsequent distribution of cigarettes through undercover sales to cigarette traffickers is
20   not distribution of contraband cigarettes by the agents.  Under the holding in *Hasan*, untaxed
21   cigarettes only become contraband when they are possessed by someone like the defendants who
22   are not exempted from the statutory definition of contraband cigarettes.

23       Citing *United States v. Recio*, 270 F.3d 845, 848 (9th Cir. 2001) and *United States v.*
24   *Fiander*, 547 F.3d 1036, 1042 (9th Cir. 2008), the government argues that the Ninth Circuit has
25   held that neither legal, nor factual impossibility is a defense to a charge of conspiracy.

26       Finally, the government maintains that Babayan's list of improper tactics employed by
27   agents in this undercover operation did not singularly, or in combination, "elevate this
28   investigation to the level of outrageous conduct."  The United States relies on *United States v.*

1    *Khan*, 771 F.3d 367, 377 (7th Cir. 2014) and *Hasan, supra*, to argue that this investigation is

2    similar to other contraband cigarette investigations and prosecutions in which some of the same

3    arguments have been raised and rejected.  There is nothing about the nature of this investigation

4    that would rise to the level of outrageous conduct, and the court should therefore deny the motion

5    to dismiss.

6    **IV.    The Reply**

7    The reply argues the government has failed to provide any authority establishing that any

8    taxes were applicable for cigarettes that were shipped out of the country.  The Seventh Circuit case

9    of *United States v. Skoczen*, has no bearing on this issue.  In fact, Babayan argues the case strongly

10   supports his position because it expressly recognizes that if the defendant had been a distributor

11   planning to ship cigarettes out of state, he would not have had to affix tax stamps and would not

12   be in violation of the CCTA.  Thus, the indictment must be dismissed as a matter of law because

13   the government has not and cannot establish that cigarettes were contraband under Nevada law,

14   and therefore cannot establish a violation of the CCTA.

15   The reply also argues that the government's opposition did not establish that the indictment

16   is adequate as a matter of law because the CCTA only criminalizes actions involving contraband

17   cigarettes.  Babayan cannot be guilty of a CCTA violation unless taxes were owed on the cigarettes.

18   The CCTA only prohibits possession of unstamped cigarettes if taxes are due.  This is a critical

19   point that the government continues to ignore.

20   Finally, Babayan argues that the government has failed to cite a single case that holds that

21   cigarettes going out of the country must bear evidence of Nevada tax stamps.  If the court believes

22   the Nevada regulatory scheme is "less than clear", the rule of lenity should "serve as a tie breaker

23   in his favor."  Under the rule of lenity, a court is required to limit the reach of criminal statutes to

24   the clear import of their text and construe any ambiguity against the government.  The court should

25   therefore dismiss the superseding indictment with prejudice.

26   / / /

27   / / /

28   / / /

**DISCUSSION**

I.      **Applicable Law**

        A.  **Evidentiary Hearing**

        In *United States v. Howell*, the Ninth Circuit held a court must hold evidentiary hearing if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that relief must be granted if the facts alleged are proved.  *See* 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).  The court need not hold a hearing on defendant's pre-trial motion "merely because a defendant wants one.  Rather, the defendant must demonstrate that a significant disputed factual issue exists such that a hearing is required."  *Howell*, 231 F.3d at 621 (internal citation omitted).  The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.  *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979).  The court finds Babayan has not met his burden of establishing he would be entitled to the relief requested, that is, dismissal, if the facts he alleges in the motion to dismiss for outrageous government conduct were proved.  The court will therefore deny his request for an evidentiary hearing.

        B.  **Fed. R. Crim. P. 12**

        Pursuant to Rule 12 of the Federal Rule of Criminal Procedure, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3) specifies the motions which must be made before trial.  Fed. R. Crim P. 12(b)(3).  Among these is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v).  A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact.  *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

        In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an

offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.").   The court should not consider evidence that does not appear on the face of the indictment.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). Thus, a defendant is not entitled to an evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses.  *Id.* at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged.  *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).   Rule 12 motions cannot be used to determine "general issues of guilt or innocence" which "helps ensure that the respective provinces of the judge and jury are respected."  *Boren*, 278 F.3d at 914 (citation omitted).  A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence.  *Jensen*, 93 F.3d at 669 (citation omitted).  However, the court may dismiss an indictment if "it fails to recite an essential element of the charged offense."  *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014) (citing *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)).

### C.  Sufficiency of an Indictment

An indictment is "sufficient if: (1) it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend; and (2) it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87 (1974)); *see also Russell v. United States*, 369 U.S. 749, 763–64 (1962); Fed. R. Crim. P. 7(c).

An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished."  *Hamling*, 418 U.S. at 117.  The Ninth Circuit has held:

> An indictment will withstand a motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being

1
2
> prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge."

3 *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quoting *United States v. Bernhardt*, 840

4 F.2d 1441, 1445 (9th Cir. 1988)); *see also United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir.

5 1991)); *United States v. Flanagan*, 126 F. Supp. 2d 1284, 1292–93 (C.D. Cal. 2000); *Ruiz-Castro*,

6 125 F. Supp. 2d at 413.  The sufficiency of an indictment is determined by "whether the indictment

7 adequately alleges the elements of the offense and fairly informs the defendant of the charge, not

8 whether the government can prove its case."  *United States v. Blinder*, 10 F.3d 1468, 1471 (9th

9 Cir. 1993) (quoting *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982), *cert. denied*, 460

10 U.S. 1086 (1983)).

11       The Ninth Circuit reviews a district court's decision to dismiss an indictment *de novo*.

12 *United States v. Jackson*, 480 F.3d 1014, 1016 (9th Cir. 2007).

13       Here, Babayan and Grigoryan are charged in Count 1 with conspiracy to traffic in

14 contraband cigarettes.  The superseding indictment alleges that between September 2014, and

15 October 2015, the defendants conspired "to knowingly and unlawfully ship, transport, receive,

16 possess, and purchase contraband cigarettes in violation of 18 U.S.C. § 2342(a).  Superseding

17 Indictment (ECF No. 19), Count 1.  The primary purpose of the conspiracy was to make as much

18 money as possible which was carried out in the ways, manner and means described in Paragraphs

19 1 through 8 of the superseding indictment.  The superseding indictment outlines 47 overt acts

20 committed in furtherance of the conspiracy in the District of Nevada and elsewhere.

21       Counts 2 through 9 allege Babayan trafficked in contraband cigarettes on 7 different

22 occasions between October 23, 2014, and May 27, 2015, in that he "did knowingly and unlawfully

23 ship, transport, receive, possess, and purchase contraband cigarettes, as that term is defined in 18

24 U.S.C. § 2341, to wit: a quantity of more than 10,000 cigarettes which bore no evidence of payment

25 of applicable State cigarette taxes in the State of Nevada, in violation of 18 U.S.C. § 2342(a)."

26       Counts 10 through 13 allege Babayan engaged in money laundering transactions between

27 November 16, 2014, and November 19, 2014, in the State of Nevada in that he "did knowingly

28 conduct financial transactions affecting interstate commerce" by purchasing MoneyGram money

1    orders in amounts of $1000 or less knowing that the transactions were the proceeds of some form

2    of unlawful activity to promote trafficking in contraband cigarettes and knowing the transactions

3    were designed to avoid a reporting requirement under federal law.  Counts 14 through 22 allege

4    Babayan engaged in money laundering in that he "did knowingly conduct financial transactions

5    affecting interstate commerce" by making cash deposits into a J.P. Morgan Chase Bank account

6    between February 17, 2015, and March 10, 2015, involving the proceeds of trafficking in

7    contraband cigarettes in violation of 18 U.S.C. § 2342(a): "(1) with the intent to promote the

8    carrying on of a specified  unlawful activity, to-wit: trafficking in contraband cigarettes; and (2)

9    knowing that the transactions were designed in whole or in part to avoid a reporting requirement

10   under Federal law."

11         Babayan is charged under the CCTA with conspiracy to traffic in contraband cigarettes,

12   and trafficking in contraband cigarettes.  The CCTA makes it "unlawful for any person knowingly

13   to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes, or contraband

14   smokeless tobacco."  18 U.S.C. § 2342(a).  The CCTA defines contraband cigarettes as:

15/16/17/18/19

> ….a quantity in excess of 10,000 cigarettes, which bear no evidence
> of the payment of applicable State or local cigarette taxes in the State
> or locality where such cigarettes are found if the State or local
> government requires a stamp, impression, or other indication to be
> placed on packages or other containers of cigarettes to evidence
> payment of cigarette taxes, and which are in the possession of any
> person other than a person otherwise authorized to possess such
> cigarettes.

20   18 U.S.C. § 2342(2).  Four elements exist for a CCTA violation: that a defendant (1) knowingly

21   ship, transport, receive, possess, sell, distribute, or purchase (2) more than 10,000 cigarettes (3)

22   that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires

23   the cigarettes to bear such stamps.  18 U.S.C. §§ 2341(2), 2342(a).  *City of New York v. Fedex*

24   *Ground Package System, Inc.*, 314 F.R.D. 348 (S.D.N.Y. 2016).

25         Babayan is charged with conspiracy to violate the CCTA and trafficking in cigarettes in

26   violation of the CCTA.  With respect to the conspiracy count, the government is correct that the

27   Ninth Circuit has held legal and factual impossibility are not  defenses to a conspiracy charge.

28   *United States v. Fiander*, 547 F.3d 1036, 1042 (9th Cir. 2008).  There, the court held that although

1    the defendant could not be prosecuted for a substantive violation of the CCTA because he was a

2    member of the Yakima Nation, he could be prosecuted for a RICO conspiracy in which the

3    racketeering activing was contraband cigarette trafficking.   The Ninth Circuit found this

4    conclusion was consistent with "well-established conspiracy law."   *Id.*   Conspiracy punishes

5    concerted criminal activity and a defendant may be convicted of a conspiracy whether or not the

6    subsequent crime is committed.   *Id.* Many conspiracies arise out of federal law enforcement sting

7    operations.   The Ninth Circuit has long held that impossibility is not a defense to a conspiracy

8    charge.   *Id.*, citing *United States v. Bosch*, 914 F.2d 1239, 1241 (9th Cir. 1990) (rejecting the

9    defendant's argument that because the undercover agent never actually possessed cocaine, it was

10   "legally impossible…to conspire to aid and abet a non-existent offense"); *United States v. Everett*,

11   292 F.2d 596,599 (9th Cir. 1982) (rejecting the defense of legal impossibility to a conspiracy

12   charge where the conspiracy was with an undercover agent).   *See* also *United States v. Rueter*, 536

13   F.2d 296, 298 (9th Cir. 1976) (rejecting impossibility defense in a conspiracy charge, holding that

14   "accomplishment of the conspiracy's goal is immaterial to the crime").

15          In reviewing the sufficiency of the indictment, the court does not determine whether the

16   government can prove its case, only whether the indictment states a cognizable offense.   Here, the

17   indictment alleges a conspiracy to traffic in contraband cigarettes which tracks the statutory

18   language.

19          The trafficking in contraband cigarette counts also track the statutory language and allege a

20   violation of the CCTA in that Babayan "did knowingly and unlawfully ship, transport, receive,

21   possess, and purchase contraband cigarettes, as that term is defined in 18 U.S.C. § 2341, to-wit: "a

22   quantity of more than 10,000 cigarettes which bore no evidence of the payment of applicable State

23   cigarette taxes in the State of Nevada."   The government acknowledges that whether or not

24   Babayan owed Nevada cigarette taxes may be a defense to the charges.   However, the government

25   argues that this defense is based on factual arguments which must be determined by the jury, and

26   not the court in a Rule 12(b) motion.

27          At least one circuit has held that a defendant could be convicted of violating the CCTA

28   without being one required to pay state cigarette taxes.   In *United States v. Skoczen*, 405 F.3d 537

13

1   (7th Cir. 2005), the Seventh Circuit Court of Appeals held that the fact that the defendant did not

2   violate the Illinois state cigarette tax law because he was not a distributor, and therefore not

3   responsible under state law for paying cigarette taxes, did not preclude his conviction under the

4   CCTA.  The court reasoned that the CCTA makes it a crime to knowingly possess contraband

5   cigarettes which are defined as cigarettes that bear no evidence of payment of applicable state taxes

6   in the state where the cigarettes are found.  The Seventh Circuit held that the CCTA did not

7   required that the person possessing contraband cigaretts be the one in violation of state law.  It

8   found that although a violation of state cigarette tax law may be a predicate to a CCTA violation,

9   this did not mean that the defendant violating the federal act must also be in violation of the state

10  law.  The court concluded that the CCTA applies not only to a person to whom state law requires

11  payment of taxes, but to anyone who possesses more than the requisite quantity of cigarettes which

12  bear no evidence of payment of applicable state cigarette taxes.

13          The superseding indictment is not required to negate an affirmative defense, or the

14  exceptions under the CCTA.  *United States v. Gord*, 77 F.3d 1192. 1194 (9th Cir. 1996).  There

15  the court held that a violation of the state cigarette tax law is a predicate to a CCTA violation.  *Id.*

16  at 1193.  However, citing a number of its prior cases, it held that while the indictment must

17  ordinarily charge every essential element of the offense, it need not negate every applicable

18  statutory exception.  *Id.* (internal quotations and citations omitted).

19          Babayan's arguments regarding whether he owed any state cigarette taxes, and whether

20  state cigarette taxes were actually due, are fact based determinations for the jury to decide based

21  on the evidence introduced at trial, and not for the court to determine in a motion to dismiss.  The

22  indictment in this case alleges that Babayan knowingly and unlawfully shipped, transported,

23  received, possessed and distributed contraband cigarettes which did not bear evidence of payments

24  of applicable state cigarette taxes in the state of Nevada.  It tracks the language of the CCTA and

25  alleges all elements of the offense.  It is thus sufficient to inform Babayan of the nature of the

26  charges, enable him to prepare his defense, and plead double jeopardy.

27  / / /

28  / / /

## II.      Outrageous Government Conduct

Babayan also seeks dismissal of the superseding indictment based on outrageous government conduct.  An outrageous government conduct defense is grounded in due process principles. A dismissal of an indictment for outrageous government conduct is rooted in the due process clause of the Fifth Amendment of the Constitution which provides, "no person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  In *United States v. Russell*, 411 U.S. 423, 431-32 (1973), the Supreme Court held that outrageous government conduct occurs when the actions of law enforcement officers or informants are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."

The Ninth Circuit has held that dismissal of an indictment for outrageous government conduct is "limited to extreme cases" in which the defendant can demonstrate that the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice."  *United States v. Stinson,* 647 F.3d 1196, 1209 (9th Cir. 2011).  This is an "extremely high standard."  *United States v. Black,* 733 F.3d 294, 302, (citing *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993)).  There are only two federal appellate court decisions which have reversed convictions for outrageous government conduct.  *Black*, *Id.* citing *United States v. Twigg*, 588 F.2d 373 (3rd Cir. 1978); *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971).

Because there is no bright line rule establishing when law enforcement's conduct goes from acceptable to outrageous, each case must be resolved on its own facts, considering the totality of the circumstances.  *Id.* at 302, 304.  The Ninth Circuit's decisions prior to *Black* provided some guidance about when law enforcement conduct crosses the line between acceptable and outrageous.  In *United States v. Williams,* 547 F.3d 1187, 1199 (9th Cir. 2008), the Ninth Circuit held that it was outrageous for government agents to engineer and direct a criminal enterprise from start to finish (internal quotations omitted).  It is outrageous government conduct to use "excessive physical or mental coercion" to convince an individual to commit a crime.  *United States v. McClelland,* 72 F.3d 717, 721 (9th Cir. 1995).  It is outrageous for the government to generate new

1    crimes "merely for the sake of pressing criminal charges." *United States v. Emmert*, 829 F.2d 805,

2    812 (9th Cir. 1987).  It is not outrageous for law enforcement to infiltrate a criminal organization,

3    approach people who are already involved in or contemplating a criminal act, or to provide

4    necessary items to a conspiracy.  *United States v. So,* 755 F.2d 1350, 1353 (9th Cir. 1985).  It is

5    also not outrageous for the government to "use artifice and stratagem to ferret out criminal

6    activity." *United States v. Bogart,* 729 F.2d 1428, 1438.

7    In *United States v. Black*, the Ninth Circuit found that the reverse sting challenged on

8    appeal fell "within the bounds of law enforcement tactics that have been held reasonable."  733

9    F.3d at 302.[1]  Although the court upheld the conviction, it was troubled by two aspects of the

10   fictional sting operation and how it came about in the first place.  First, the court of appeals was

11   concerned that the defendants were convicted of conspiracy to possess cocaine with intent to

12   distribute and use of firearms in furtherance of a drug trafficking crime which resulted from an

13   operation created and staged by ATF.  *Id.* at 302-303.  An ATF undercover officer used a CI and

14   invented the entire scenario, the need for weapons and a "crew," and the amount of cocaine

15   involved.  The court found that the facts of the case suggested that the defendants were responding

16   to the government's script, and that their only overt actions involved showing up at meetings,

17   arriving at a parking lot with four hidden, loaded weapons, and driving to the storage warehouse

18   where they were arrested.  The defendants' actions corroborated that they intended to carry out

19   these robberies, but also that they were responding to the scheme created by the government.  The

20   *Black* court's second concern with the reverse sting operation was how the government recruited

21   the defendants.  ATF did not infiltrate a suspected crew of home invasion robbers or seduce

22   persons known to have actually engaged in these types of crimes.

23   In upholding the convictions the Ninth Circuit applied various factors its prior cases had

24   found relevant to determine whether the government conduct was outrageous: (1) known criminal

25   characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the

26   government's role in creating the crime of conviction; (4) the government's encouragement of the

27

28   [1] A "reverse sting" is a term applied when the government initiates the criminal conduct, setting up a fictitious crime, and arresting criminals as they begin to carry out what they believe is a real crime. *Id.* at 298 n.1.

1    defendants to commit the offense conduct; (5) the nature of the government's participation in the

2    offense conduct; and (6) the nature of the crime being pursued and the necessity for the actions

3    taken in light of the nature of the criminal enterprise at issue. *See* 733 F.3d at 303. However, the

4    Ninth Circuit stated that these factors were not a "formulistic checklist," but a means to focus the

5    court's "analysis of the totality of the circumstances." *Id*. at 304.

6              Applying these factors, the court finds that Babayan has not established that the

7    government conduct he challenges is one of the extreme cases that violates fundamental fairness

8    and is so grossly shocking and outrageous as to violate a universal sense of justice. This is an

9    extremely high standard, and there are only two federal appellate court decisions which have

10   reversed convictions for outrageous government conduct. Babayan claims that the government's

11   undercover sting operation in this case amounts to outrageous government conduct which warrants

12   dismissal for a variety of reasons. First, he argues that undercover agents bought and sold

13   contraband cigarettes in violation of federal law, and allowed the defendants to keep the

14   contraband cigarettes to resell or broker. Thus, it was the government that was depriving the state

15   of state tax revenues. Second, the government introduced millions of cigarettes with counterfeit

16   tax stamps into interstate commerce. Third, government undercover officers "fronted" products

17   to the defendants, sometimes funded the entire operation, and induced them to sell larger and larger

18   quantities of contraband cigarettes. Finally, Babayan argues that government agents "cajoled" the

19   defendants to engage in illegal sales. The motion does not specify how they were cajoled.

20             The government responds that the undercover investigation in this case was initiated after

21   Babayan approached a smoke shop operator seeking an inexpensive source of cigarettes to

22   smuggle to Russia. The smoke shop owner gave Babayan the undercover phone number of

23   Homeland Security Special Agent Scott McGuire. The government claims, and Babayan's reply

24   does not dispute, that Babayan contacted the undercover officer and over the next several months

25   initiated purchases of more than 5,000,000 cigarettes from McGuire. The government maintains,

26   and again Babayan does not dispute, that all cigarette purchases were initiated by Babayan and

27   delivered to Babayan and co-defendant Grigoryan in Nevada. The government contends Babayan

28   was caught in recorded conversations bragging about being in the business of smuggling cigarettes

1    for over 10 years and discussing the fact that applicable state taxes had not been paid on cigarettes

2    he and Grigoryan obtained.

3        In *United States v. Hasan*, 718 F.3d 338, 341 (4th Cir. 2013) the Fourth Circuit rejected

4    similar arguments that the ATF undercover operation was outrageous because ATF "let the

5    cigarettes walk" and allowed these items to be distributed on the black market rather than

6    confiscating them.  The Fourth Circuit also rejected Babayan's arguments that the government's

7    conduct was outrageous because ATF agents could lawfully possess untaxed cigarettes under the

8    CCTA, but had no authority to distribute untaxed cigarettes. *Id.* at 344. The court found that this

9    was a misreading of the CCTA which did not "authorize" federal agents to possess contraband

10   cigarettes, but plainly provided that cigarettes in the possession of federal agents in the course of

11   their official duties were not contraband as a matter of law.  *Id.*   The court reasoned that untaxed

12   cigarettes only become contraband when they are possessed by people like the defendant, who is

13   not exempted from the statutory definition.  *Id.*

14       In short, the court finds Babayan has not met the extremely high standard of establishing

15   the government conduct in this case is so outrageous it warrants dismissal.

16   **III.    Entrapment**

17       Finally, Babayan argues the court should dismiss the indictment because the government's

18   conduct in this undercover operation amounted to entrapment.  "To establish entrapment as a

19   matter of law, the defendant must point to undisputed evidence making it patently clear that an

20   otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud

21   of a government agent." *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir. 1986); *See* also

22   *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008).  Entrapment is an affirmative

23   defense, therefore, it is "an issue for the trial, not for a motion to dismiss." *United States v. Freed*,

24   401 U.S. 601, 607 (1971); *see also United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003).

25   "Federal Rule of Criminal Procedure 12 allows a defendant to assert a defense in a pretrial motion

26   if the merits of the defense can be determined 'without a trial of the general issue'." *United States*

27   *v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) (quoting Fed. R. Crim. P. 12(b)(2)). "However, if

28   the pretrial motion raises factual questions associated with the validity of the defense, the district

court cannot make those determinations" because doing so "would invade the province of the ultimate finder of fact." *Id.* (citing *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986); *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976)). Thus, even if a motion to dismiss is construed as a request for a jury instruction on the issue of entrapment, it is a matter that must be deferred until after the trial court hears the evidence and determines whether the parties have met their respective evidentiary burdens. *Schafer*, 625 F.3d at 635. Babayan's entrapment defense is a matter for the jury to decide based on the evidence presented at trial.

For the reasons explained,

**IT IS RECOMMENDED** that Babayan's Motion to Dismiss Pursuant to Fed. R. Crim. P. 12, Alternatively, for Outrageous Governmental Conduct and Entrapment (ECF No. 38) be **DENIED**.

DATED this 8th day of December, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE